IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Crim. Nos. 04-80-SLR & 04-139-SLR |
| | ) | |
| HERMAN MEREDITH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this $\cancel{g}^{\text{th}}$ day of September, 2011, having considered defendant's

motions[1] to modify/reduce conditions;

IT IS ORDERED that, for the reasons that follow, defendant's motions (*Meredith*

*I* at D.I. 55; *Meredith II* at D.I. 16) are denied:

1. On February 4, 2005, defendant pled guilty to four counts of bank robbery, in

violation of 18 U.S.C. § 2113(a),[2] and one count of armed bank robbery, in violation of

18 U.S.C. § 2113(a)(d).[3] (*Meredith I* at D.I. 33; *Meredith II* at D.I. 7) As part of the plea

agreements, defendant agreed he would "enter voluntarily the United States Bureau of

---

[1]Defendant filed identical motions in his cases, *United States v. Meredith*, Crim. No. 04-80-SLR ("*Meredith I*") (D.I. 55) and *United States v. Meredith*, Crim. No. 04-139 ("*Meredith II*") (D.I. 16).

[2]The counts related to four different bank robberies that defendant committed in the span of three hours in Wilmington, Delaware. (*Meredith I*)

[3]This count related to a bank robbery defendant committed nine days after the Delaware robberies in the District of Maryland. Although indicted in the District of Maryland, defendant agreed to plead guilty in this court. (*Meredith II*)

Prisons' ("BOP") administered program known as the Inmate Financial Responsibility Program ("IFRP"),[4] through which the BOP will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered." (*Id.* at D.I. 33, D.I. 7)

2. On June 7, 2005, defendant was sentenced to 110 months imprisonment followed by five years of supervised release. (*Id.* at D.I. 49, D.I. 13) The court ordered defendant to pay a special assessment of $500 (due immediately) and to pay restitution to the various victim financial institutions, in the total amount of $17,525.00. Defendant's payment on the restitution obligation was ordered to begin "immediately" and the payment of defendant's monetary penalties during imprisonment would be "made through the BOP's IFRP. Further, upon release and serving supervised release, the court ordered that defendant make payments of no less than $50 per month.

3. On January 12, 2008, defendant wrote a letter requesting that the court reduce his monthly restitution-related contribution to $25. (*Id.* at D.I. 53, D.I. 14) Defendant, while incarcerated at FCI Allenwood, wrote that he was employed by UNICOR[5] and had agreed to participate in the IFRP. (*Meredith II* at D.I. 14) Defendant

---

[4]The IFRP Is meant to "encourage each sentenced inmate to meet his or her legitimate financial obligations. Those financial obligations generally consist of a fine, an order for restitution, and/or a special assessment imposed as part of a criminal judgment." *McGee v. Martinez*, 627 F.3d 933, 936 (3d Cir. 2010) (citations omitted). The goal of the IFRP is "to achieve compliance with a provision of each convict's criminal judgment-namely, the timely payment of whatever sum the court has ordered him to pay." *Id.*

[5]"UNICOR is the trade name of Federal Prison Industries, Inc., a self-sustaining government corporation that provides employment and job training to BOP inmates while producing marketable good and services." *United States v. Lemoine*, 546 F.3d 1042, 1047 n.3 (9th Cir. 2008).

claimed that half of his UNICOR pay was garnished each month to pay fines and

restitution, resulting in a financial hardship.

4. After conferring with the United States Probation Office, the court denied

defendant's request. Specifically, the court wrote:

> [Y]ou are currently employed in the prison's UNICOR work program
> and, as a result of your outstanding financial obligations, the BOP
> garnishes 50% of your prison income and applies it toward your
> outstanding balance. Consequently, you have paid $412 toward the
> special assessment and paid no money toward the restitution balance.
> Last month you earned $140 through UNICOR and $120 the previous
> month, leaving an average monthly balance of $65 which may be used
> for prison commissary purchases or set aside as savings upon release.

(*Meredith II* at D.I. 15)

5. Less than two months later, defendant filed a "special motion," seeking an

order exempting him from being required to put any further monies earned in prison

toward his court-ordered financial obligations. Specifically, defendant averred:

> [B]ecause [of] economic circumstances of incarceration, lack
> of financial support and family needs make it a hardship to pay
> any fines/restitutions while even working in the BOP UNICOR.
> It cost[s] [defendant] or would if he could afford it over $65 alone
> to call his loved ones/friends in N.C. for moral support and not
> to mention the cost of legal copy cards, typing ribbons, mailing stamps
> in his due diligent fundamental constitutional rights to continue his
> habeas filings seeking judicial downward departures as a result of
> the U.S. Sentencing Commissions many amendments to Sentencing
> Guidelines. Thus, [defendant] submits that making any payments
> at this time of incarceration dely (sic), deny and deprive him or
> reasonable abilities to live, function and communicate adequately
> with both family, friends and judicial filings, thereby violating his
> constitutional rights.

(*Meredith II* at D.I. 16 at 2) Defendant sought to postpone his IFRP payments until he

is released from prison, on supervised release and has "obtained quality employment."[6]
(*Id.*)

6. The government opposes any change to the restitution payments, arguing, chiefly, that the court lacks jurisdiction to entertain the relief requested. The court agrees.

7. The BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. In circumstances where an inmate has a financial obligation, a BOP staff member must assist the inmate in developing a financial plan and monitor the inmate's progress in satisfying the financial obligation. 29 C.F.R. 545.11. The IFRP is not a mandatory program. *United States v. Lemoine*, 546 F.3d at 1047 n.3. Failure to participate, however, may result in the inability to obtain certain prison benefits. 28 C.F.R. § 545.11(d).

8. The United States Court of Appeals for the Third Circuit has explained that any challenge to the manner in which the BOP sets a payment schedule and collects court-ordered obligations under the IFRP is a challenge to the execution of defendant's sentence and must be brought pursuant to 28 U.S.C. § 2241.[7] *McGee v. Martinez*, 627 F.3d at 936-937. Moreover, claims brought under § 2241 must be initiated in the district where the sentence is being carried out. *Matheny v. Morrison*, 307 F.3d 709, 711-12

---

[6]According to the bop.gov, defendant is scheduled to be released on May 20, 2012. Federal Bureau of Prisons, http://www.bob.gov/iloc2/LocateInmate.jsp (September 27, 2011). He is currently incarcerated at Allenwood Federal Correctional Complex in White Deer, Pennsylvania. *Id.*

[7]28 U.S.C. § 2241(a) provides "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."

(8th Cir. 2002).

9. Applying this authority to defendant's claims, the court is without jurisdiction to consider the case. Should defendant elect to file a petition for relief pursuant to 28 U.S.C. § 2241, he must do so in the district in which he is incarcerated.

_____
United States District Judge